Wilson, J.
This action was commenced by plaintiff Osborn to recover a balance of $46.45 on an account alleged to be due from the defendant corporation to him for services rendered as an attorney at law. The suit having been commenced before a justice of the peace, there were no written pleadings, and hence we must rely upon the evidence presented to ascertain the issues between the parties. Only two witnesses testified, plaintiff and Thomas Freeman, the president and general manager of the defendant corporation. The abstract furnished us is quite incomplete, and apparently defective, hence it is somewhat difficult to determine all the points of controversy between the parties. The account upon which suit was brought commenced running in 1894, and continued for about two years. The first item charged was that of fees *489 for drawing the articles of incorporation and other papers to organize the corporation, and the advancing of the necessary fees to file with the secretary of state and county clerk. On the testimony, it appears that all of the business transactions out of which the account grew arose between the plaintiff and Thomas Freeman, the latter calling upon the former and requesting him to perform certain services. Mr. Freeman, in his testimony, denies that services were rendered for or on account of the company, but were personal concerns of his own. The plaintiff testified that in October, 1894, Mr. Freeman called upon him and requested him to prepare articles of incorporation for the Freeman Inprovement Company, and that his purpose and object, as expressed to him, were that Mr. Freeman, being in fear of certain creditors, might be enabled to continue business in the name of the corporation, and thus escape being harassed. The incorporators seem to have been Mr. Freeman and two of his sons, although the evidence is very indefinite on this point and upon numerous others. Mr. Osborn further testified that he desired at this time to know of Mr. Freeman against whom he should make charges and render account for services which he might hereafter perform at the instance of Mr. Freeman, and was told that he should make his charges against the corporation which was then being formed. These are substantially the facts, as we gather them from the abstract.
As stated in the brief of counsel for the defendant, it defends upon the ground that it never authorized Mr. Freeman to make any contract for it, nor has it in any way ratified his acts.
Second, that the company had no interest whatever “in any of the property on which Mr. Osborn performed the services” for Mr. Freeman, and that Mr. Osborn never performed any services for the company, directly or indirectly.
That some of the services were undoubtedly performed for the company is admitted by the testimony on both sides, because the charges against the company for services in preparing its articles of incorporation, filing them, etc., were *490 undoubtedly proper charges against the company. As to the other charges,-we think the company is, upon the evidence, clearly estopped from denying the authority of Mr. Freeman to direct the services and obligate the company to pay, because it appears that the account had been submitted to, or at least seen by, Mr. Freeman at various times; and especially for the further reason that during these two years numerous payments had been made to Mr. Osborn on the account, in a few instances by cash, but in the majority of cases by checks drawn by the Freeman Improvement Company, in his favor. We think that under every established principle of estoppel, the defendant cannot now be heard to say that it did not ratify the acts of its president and general manager and is not liable for the balance of this account. Whether or not it ever specifically authorized Mr. Freeman to contract this indebtedness is immaterial. Even if wholly unauthorized, by suffering payment to be made from its funds from time to time on the account, of which its general manager and president had notice, it now estops itself from denying its liability. It is true, Mr. Freeman denied that he had ever seen the account, except a short time previous to the commencement of the suit, and claimed that these payments were made, some on account of loans to Mr. Osborn, and others on account of prior indebtedness; but these were questions of fact for the jury, and they were determined adversely to the contention of the defendant.
There was sufficient evidence to sustain this verdict, and under the well settled rule it must be conclusive upon this court. So far as we can see from the record presented, no material error was committed. The judgment will therefore be affirmed.

Affirmed.